**In re AIR CRASH DISASTER AT STA-PLETON INTERNATIONAL AIR-PORT, DENVER, COLORADO, ON NOVEMBER 15, 1987.**

**M.D.L. No. 751.**

United States District Court,
D. Colorado.

June 7, 1989.

ORDER MDL 751–38

## MEMORANDUM OPINION ON EVIDENCE ORDERS

SHERMAN G. FINESILVER, Chief Judge.

This multidistrict action involves claims for personal injury and wrongful death arising out of the crash of a commercial airliner. Consolidated claims for liability and damage claims of plaintiffs Karen Svea Johnson, a passenger injured in the crash, and Robert Cooke, Jr., her husband, were presented to the jury during January of 1989. Defendants in this litigation are Continental Airlines, Inc., ("Continental") and Texas Air Corporation.[1] The Johnson claims were tried as an exemplar case by her counsel and the Plaintiffs Steering Committee.[2] Briefly stated, the jury found

---

**1.** The court dismissed claims against Texas Air during trial.

**2.** For a comprehensive discussion of the procedural background of this multidistrict litigation,

see *In re Air Crash Disaster at Stapleton Int'l Airport,* Order MDL 751–33, 720 F.Supp. 1467 (D.Colo. Mar. 10, 1989).

defendant's conduct had been wilful or reckless under Idaho law, but not grossly negligent in a manner warranting punitive damages under Texas law. As a result, the court was prevented from limiting the Ms. Johnson's non-economic recovery under Idaho law, but no exemplary damages were awarded under Texas law. The jury also found that although defendant's advertising amounted to a deceptive trade practice under Idaho law, the practice caused no injury to Ms. Johnson.

During trial, the court ruled on several evidentiary matters and established certain trial procedures on which we expand in this opinion: (1) admissability of investigative reports of the National Transportation Safety Board, (2) admissability of the personnel files of other airlines relating to Continental Airlines employees, (3) admissability of deposition testimony of unavailable witnesses under Rule 32(a)(3) of Federal Rules of Civil Procedure, and (4) summary presentation of testimony and depositions at trial.

### I.

Accident Investigation Reports Federal Aviation Act 49 U.S.C.App. § 1441(e) Rule 803(8)(C) of the Federal Rules of Evidence

Continental Airlines Flight 1713 crashed on November 15, 1987 at Stapleton International Airport in Denver, Colorado during a heavy snowstorm. As the DC–9 lifted off the runway, it overturned and crashed. On impact, the passenger compartment broke into several pieces and an explosion produced a fireball which moved through the cabin from front to back. The accident killed 28 persons, most seated in the front portion of the cabin, and injured 54 others. Among the deceased were the pilot, a flight attendant, and the co-pilot, who had been in control of the aircraft during takeoff.

The NTSB, in accordance with federal regulations, began an investigation of the crash. Investigative teams, including management personnel from the airline were brought in from around the country. During the summer of 1988, the Board held hearings on the causes of the crash in Golden, Colorado. Passengers, flight attendants, airline officials and others testified at the hearing. The Board released its report on September 27, 1988, finding in part that the crash was caused by pilot error and improper de-icing procedures. The Board rejected several theories propounded by Continental Airlines regarding the cause of the crash. The report included an appendix, prepared by an investigative sub-committee on "Human Factors" contributing to the crash, that suggested the cockpit crew and especially the co-pilot in control of the aircraft lacked the qualifications necessary to fly the DC–9 in the weather conditions they confronted on November 15, 1987.

Plaintiffs tendered the report in support of claims for negligence, punitive damages, and false advertising of pilot qualification and safety under the Texas Deceptive Trade Practices Act. Plaintiffs excluded portions of the report captioned (1) Executive Summary, (2) Probable Cause Finding, and (3) Recommendations. In two motions, defendants objected generally to admission of the entire report and specifically to admission of the Human Factors report. On January 25, 1989, the court ruled formally on the objections and admitted the edited report into evidence. We re-affirm that ruling and present additional comment.

#### 1. *General Admissability of the NTSB Report.*

Accident investigation reports of the National Transportation Safety Board ("NTSB" or the "Board") present conclusions as to the probable cause of an air crash disaster and recommendations for preventing similar accidents in the future. The reports include and compile (a) data collected by investigators and at public hearings on a particular crash, and (b) reports of various investigative teams established by the Board to look into specific areas which might have contributed to cause the crash, i.e. human factors, weather conditions, air traffic, etc. NTSB accident investigation reports are useful to litigants in air crash cases; they relate in-depth factual investigations beyond the limited resources of some litigants. *See* W. Turley, Aviation Law § 13.14.

The admissability of NTSB reports is controlled by statutory limitation. 49 U.S. C.App. § 1441(e) states:

No part of any report or reports of the Board relating to any accident or the investigation thereof, shall be admitted as evidence or used in any suit or action for damages growing out of any matter mentioned in such report or reports.

Defendants urge the court to apply the Ninth Circuit Court of Appeals rule that the statute acts as a complete bar to the admission of any portion of the final report or sub-reports. *See Protectus Alpha Navigation v. North Pacific Grain Growers, Inc.*, 767 F.2d 1379, 1385 (9th Cir.1985); *Huber v. United States*, 838 F.2d 398, 403 (9th Cir.1988) (applying *Protectus* interpretation to similar provision applicable to Coast Guard reports).

Plaintiffs contend that the Ninth Circuit rule is not controlling in this litigation. The author of the *Protectus* opinion recognizes that the holding is at variance with the Tenth Circuit rule set forth in *Keen v. Detroit Diesel Allison*, 569 F.2d 547, 549–51 (10th Cir.1978). *See also Mullan v. Quickie Aircraft Corp.*, 797 F.2d 845, 848 (10th Cir.1986) (reaffirming *Keen* rule). State courts in Colorado also apply the *Keen* rule. *See Murphy v. Colorado Aviation, Inc.*, 588 P.2d 877, 881–82 (Colo.App. 1978).

■ Although not raised by the parties, the court considered the fact that many of these multi-district cases, including the exemplar case, were filed in the District of Idaho. Had these cases been tried in Idaho, the Ninth Circuit rule would be strong precedent controlling the presentation of evidence. The NTSB report would have been inadmissible in its entirety under *Protectus*. The federal law of the transferee forum (Colorado) is in conflict with the law of the transferor forum (Idaho) in many of these multi-district cases. When such circumstances exists, the transferee court is required to give careful consideration to the law of the transferor forum, but is bound by the informed and reasoned opinions setting forth the law of its own Circuit. *In re Korean Air Lines Disaster*,

829 F.2d 1171, 1174–75 (D.C.Cir.1987), *aff'd sub nom. on other grounds*, —— U.S. ——, 109 S.Ct. 1676, 104 L.Ed.2d 113 (1989). The principle requiring informed application of the federal law of the transferee forum applies after formal transfer of multi-district cases for trial, pursuant to 28 U.S.C. § 1404, as well as during the pre-trial phases litigated pursuant to 28 U.S.C. § 1407. *See In re Korean Air Lines Disaster*, 829 F.2d at 1175.

■ In *Keen*, the Tenth Circuit adopted the reasoning and rules of other Circuits that are unwilling to require the trial court to draw sensitive distinctions between admissable "facts" and factual inferences drawn by the Board or its investigators. The federal statute is not a "total prohibition against 'all evaluation, opinion and conclusion evidence." *Keen*, 569 F.2d at 551 (quoting *Kline v. Martin*, 345 F.Supp. 31, 32 (E.D.Va.1972)); *see also Berguido v. Eastern Air Lines, Inc.*, 317 F.2d 628, 632 (3d Cir.), *cert. denied*, 375 U.S. 895, 84 S.Ct. 170, 11 L.Ed.2d 124 (1963) (the primary thrust of the provision is to exclude reports which express agency views as to the probable cause of the accident). The Tenth Circuit agreed that the purpose of the statute was to bar admission of conclusions or opinions more properly left to a jury rather than to establish a privilege encouraging full disclosure to the investigating agency. *Keen*, 569 F.2d at 549. The legislative history of the statute demonstrates its purpose was to prevent usurpation of the jury's role by evidentiary use of the Board's conclusions as to probable cause. This purpose is served by the exclusion of conclusions regarding the probable cause of an accident presented by the Board, its investigative sub-committees or individual employees.

The Tenth Circuit rule, and persuasive evidentiary principles, control the admissability of the NTSB reports in this litigation. *See In re Korean Air Lines Disaster*, 829 F.2d 1171, 1174–75 (D.C.Cir.1987), *aff'd sub nom. on other grounds*, —— U.S. ——, 109 S.Ct. 1676, 104 L.Ed.2d 113 (1989). Accordingly, defendants' motion to exclude the entire NTSB Report is denied.

### 2. Defendants' Motion to Exclude the Human Factors Report.

■ The rule set forth in *Keen v. Detroit Diesel Allison* does not entirely resolve the admissability of the NTSB report. Government reports are subject to the limitations of the Public Records exception to the hearsay rule contained in Rule 803(8)(C) of the Federal Rules of Evidence.[3] The Supreme Court recently clarified the distinction between "factual findings" and inadmissable "conclusions" and the hearsay principles applicable under Rule 803(8)(C). *See Beech Aircraft v. Rainey,* — U.S. —, 109 S.Ct. 439, 102 L.Ed.2d 445 (1988). The issue presented by the NTSB report regarding crash of Flight 1713 is whether the Human Factors Report, included as an appendix to the final report, is based principally on hearsay and so replete with inadmissable conclusions that the entire report should be excluded under the hearsay rules outlined in *Rainey.*

The relevant portion of Rule 803(8)(C) states that in civil cases admissable government reports are limited to "factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness." In *Rainey,* the Supreme Court addressed differing Circuit Court interpretations of the rule distinguishing between admissable "factual findings" and inadmissable "conclusions." The Supreme Court held: "portions of investigatory reports otherwise admissable under Rule 803(8)(C) are not inadmissable merely because they state a conclusion or opinion." *Id.,* 109 S.Ct. at 450. Conclusions in the NTSB report are admissable, therefore, as long as they are:

(1) based on a factual investigation; and

(2) trustworthy under the Rules of Evidence.

*Id.,* at 450 and n. 12 (suggesting that courts should be mindful that the exceptions to the hearsay exceptions are geared to admitting statements made in circumstances obviating the need for cross-examination); *see also Kehm v. Proctor & Gamble Mfg. Co.,* 724 F.2d 613, 618 (8th Cir. 1983) (upon showing that agency report is product of authorized investigation, central inquiry becomes trustworthiness).

■ Because of presumption that government prepared reports are admissable, the opponent to admissability has the burden of showing that a public record is untrustworthy. *Kehm,* 724 F.2d at 618; *Zenith Radio Corp. v. Matsushita Electric Industrial Co., Ltd.,* 505 F.Supp. 1125, 1145 (E.D.Pa.1980), *rev'd. on other grounds,* 723 F.2d 238 (3d Cir.1983).

■ Government accident investigation reports are generally admissable under the public records exception; portions of those reports or exhibits may present other hearsay problems, however. *In re Air Crash Disaster at Mannheim, Germany,* 586 F.Supp. 711, 725 (E.D.Penn.1984), *rev'd on other grounds,* 769 F.2d 115 (3d Cir. 1985). Evidence reported in a government document is only admissable to the extent that the maker of document could testify to that evidence were he present in court. *Denny v. Hutchinson Sales Corp.,* 649 F.2d 816, 821 (10th Cir.1981).

■ Where investigators rely on hearsay and non-hearsay in compiling a report, the court may review and edit certain portions of the report, rather than excluding the entire exhibit. Edited portions of the report remain admissable because Rule 803(8) attaches an assumption of trustworthiness to the government investigation as a whole. *In re Air Crash Disaster at Mannheim, Germany,* 586 F.Supp. 711, 725 (E.D.Penn. 1984), *rev'd on other grounds,* 769 F.2d 115 (3d Cir.1985); *Zenith Radio Corp. v.*

---

3. Rule 803 sets forth an itemized list of statements not excluded under the hearsay rule. Rule 803(8) describes public records and reports:

Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (A) the activities of the office or agency, or (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases, matters observed by police officers and other law enforcement personnel, or (C) in civil actions and proceedings and against the Government in criminal cases, factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness.

*Matsushita Electric Industrial Co., Ltd.,* 505 F.Supp. 1125, 1145 (E.D.Pa.1980), *rev'd. on other grounds,* 723 F.2d 238 (3d Cir.1983). Courts have admitted exhibits to accident investigation reports on this basis. *Mannheim Air Crash,* 586 F.Supp. at 726–37; *Complaint of American Export Lines, Inc.,* 73 F.R.D. 454 (S.D.N.Y. 1977).

 Applying the interpretation of Rule 803(8)(C) subsequently approved in *Rainey,* the Tenth Circuit Court of Appeals has articulated four factors to be considered in determining the trustworthiness of government reports: (1) timeliness of the investigation, (2) special skill or experience of the investigator, (3) whether a hearing was held and the level at which it was conducted, and (4) any possible motivation or bias problems in the preparation of the report. *Perrin v. Anderson,* 784 F.2d 1040, 1047 (10th Cir.1986); *see also Rainey,* 109 S.Ct. at 450 (citing *Fraley v. Rockwell Int'l Corp.,* 470 F.Supp. 1264 (S.D.Ohio 1979) (excluding report compiled by inexperienced investigator in highly complex field of investigation). As to the final factor, the fact that the agency preparing the report has, as a whole, an interest in its conclusions goes to weight, not admissability, absent specific evidence of bias. *Id.* at 1047; *see also Diaz v. United States,* 655 F.Supp. 411, 416 (E.D.Va.1987) (personal animosity of defendants' investigator did not undermine trustworthiness of

investigator who testified as to technique and was duty bound as JAG officer in charge of investigation). Trustworthiness can also be demonstrated by corroboration of the statements memorialized in the public record. *Blim v. Western Elec. Co. Inc.,* 731 F.2d 1473, 1476–77 (10th Cir.1984); *Meder v. Everest & Jennings,* 637 F.2d 1182, 1188 (8th Cir.1980). Inclusion of uncorroborated statements and unauthenticated documents in a report, however, are indicia of untrustworthiness. *Osterneck v. E.T. Barwick Indus., Inc.,* 106 F.R.D. 327, 333–34 (N.D.Ga.1984).[4]

 Reports otherwise admissable under Rule 803(8) may not contain double hearsay—recordation of otherwise inadmissible hearsay by the maker of the report. *Florida Canal Industries Inc. v. Rambo,* 537 F.2d 200, 201–02 (5th Cir.1976) (under prior federal business statute). Under the rule approved in *Rainey,* double-hearsay and predominant reliance thereon are indicia of untrustworthiness. *McKinnon v. Skil Corp.,* 638 F.2d 270, 278–79 (1st Cir.1981); *John McShain Inc. v. Cessna Aircraft Co.,* 563 F.2d 632, 635–36 (10th Cir.1981) (investigation of product design defect unreliable because of extensive reliance on statements of pilots and witnesses to various accidents). Nonetheless, partial reliance on unconfirmable hearsay is not *ipso facto* evidence that a report is untrustworthy. *Zenith,* 505 F.Supp. at 1148.[5]

---

**4.** *See also* Annotation, *Admissability of Statement under Rule 803(24) of Federal Rules of Evidence, Providing for Admissability of Hearsay Statement Not Covered by Any Specific Exception but Having Equivalent Circumstantial Guaranties of Trustworthiness,* 36 A.L.R.Fed. 742 (1978).

**5.** A considerable body of law articulating these principles has also developed in product liability and disease litigation regarding the investigative reports of public health agencies. *See Ellis v. International Playtex, Inc.,* 745 F.2d 292, 301–03 (4th Cir.1984) (toxic shock syndrome); *Kehm v. Proctor & Gamble Mfg. Co.,* 724 F.2d 613, 617–20 (8th Cir.1983) (affirming *Kehm v. Proctor & Gamble Mfg. Co.,* 580 F.Supp. 890, 889 (N.D.Iowa 1982) (toxic shock syndrome); *Givens v. Lederle,* 556 F.2d 1341, 1346 (5th Cir.1977) (polio vaccine); *Reyes v. Wyeth Laboratories,* 498 F.2d 1264, 1270 (5th Cir.), *cert. denied,* 419 U.S. 1096, 95 S.Ct. 687, 42 L.Ed.2d 688 (1974)

(polio vaccine); *Marsee v. United States Tobacco Co.,* 639 F.Supp. 466 (W.D.Ok.1986) (smokeless tobacco, trustworthiness applied to exclude some reports), *aff'd,* 866 F.2d 319 (10th Cir. 1989); *Migliorini v. United States,* 521 F.Supp. 1210, 1218 (M.D.Fla.1981) (swine flu immunization); *Wetherhill v. University of Chicago,* 518 F.Supp. 1387, 1388 (N.D.Ill.1981) (intrauterine birth control device, report excluded as untrustworthy); *Lima v. United States,* 508 F.Supp. 897, 903–04 (D.Colo.1981) (sine flu immunization), *aff'd,* 708 F.2d 502 (10th Cir.1983); *Hixenbaugh v. United States,* 506 F.Supp. 461, 469–70 (N.D. Ohio 1980) (swine flu immunization); *Alvarez v. United States,* 495 F.Supp. 1188, 1203–05 (D.Colo.1980) (swine flu immunization). The more traditional application of the rule regards the admissability of police accident investigation reports. *See, e.g., Robbins v. Whelan,* 653 F.2d 47 (1st Cir.), *cert. denied,* 454 U.S. 1123, 102 S.Ct. 972, 71 L.Ed.2d 110 (1981) (NTSB reports); *Baker v. Elcona Homes Corp.,* 588 F.2d

As a final limitation on the admissability of the Human Factors Report, case law under the public records exception holds that sub-committee reports submitted to the Board are only admissable within the rule to the extent that their findings are approved or adopted by the Board's final report. *In re Air Crash Disaster at Mannheim, Germany*, 586 F.Supp. 711, 725 (E.D.Penn.1984), *rev'd on other grounds*, 769 F.2d 115 (3d Cir.1985); *Zenith Radio Corp. v. Matsushita Electric Industrial Co., Ltd.*, 505 F.Supp. 1125, 1145 (E.D.Pa.1980), *rev'd. on other grounds*, 723 F.2d 238 (3d Cir.1983).

Inadmissable portions of the report, other than probable cause determinations, may be otherwise admissable as a means of impeachment if a witness claims to have reviewed a report and relied upon it in drawing his conclusions. *See McKinnon v. Skil Corp.*, 638 F.2d 270, 279–80 (1st Cir.1980).

The Human Factors report had been adopted in the Board's final report. Taken as a whole, the report satisfies the trustworthiness rules applicable under *Rainey*. Although some editing was necessary at trial, certain double-hearsay statements themselves fell within recognized hearsay exceptions; for example, statements taken from other government reports on the qualifications of a flight instructor who had certified the co-pilot were admitted over objection. Among other stipulated deletions, the court excluded two sections of the version of the report admitted into evidence: (1) triple-hearsay quotations of statements reported in the Human Factors Report, and (2) procedural and regulatory recommendations of the Board based in its determination of probable cause. The court and the parties also selected only the most necessary and enlightening of the voluminous, cumulative and confusing exhibits accompanying the report. In its final form, the exhibit that went to the jury included the edited report and appendices and certain NTSB exhibits appended to the report.[6]

## II.
## Airline Personnel Files Rule 803(6) of the Federal Rules of Evidence

Personnel files kept by American Airlines regarding co-pilot Lee Bruecher's application for employment at that airline were admitted as business records. This evidence was presented through video deposition testimony of a personnel executive from American Airlines. The exhibit presents two issues of admissability: (1) admissability of the entire file under the business records exception to the hearsay rule, and (2) admissability of a letter of recommendation contained in the file. The recommendation was written by Mr. Gary Abel of Texas regarding Lee Bruecher's performance at Abel Aviation, the charter airline for whom Bruecher worked just prior to submitting applications to the major commercial carriers.

The American Airlines file is admissable within the business records exception of Rule 803(6) of the Federal Rules of Evidence.[7] The business records exception, or "shop book rule," is based on the perception that indicia of reliability attach to a

551 (6th Cir.1978), *cert. denied*, 441 U.S. 933, 99 S.Ct. 2054, 60 L.Ed.2d 661 (1979) (police reports); *see also Melville v. American Home Assurance Co.*, 584 F.2d 1306, 1315–16 (3d Cir. 1978); *Jenkins v. Whittaker Corp.*, 785 F.2d 720, 726 (9th Cir.), *cert. denied*, 479 U.S. 918, 107 S.Ct. 324, 93 L.Ed.2d 296 (1986); *see also* E. Cleary, McCormick on Evidence, 890 n. 7 (3d ed. 1984); M. Graham, Handbook of Federal Evidence, 886 (2d Ed.1986); G. Lilly, An Introduction to the Law of Evidence, 275–76 (2d Ed. 1987); 4 D. Louisell & C. Mueller, Federal Evidence § 455 at 740–41 (1980); 4 J. Weinstein & M. Berger, Weinstein's Evidence ¶ 803(8)[03] at 803–250 to 803–252; Annotation, *Admissability Under Rule 803(8)(C) of Federal Rules of Evidence, of "Factual Findings Resulting From Investigation Made Pursuant to Authority Granted by Law*, 47 A.L.R.Fed. 321 (1980).

6. For comprehensive discussions of the admissability issues presented by NTSB reports, *see Admissability of National Transportation Safety Board Reports in Civil Air Crash Litigation*, 53 J.Air L. & Com. 469 (1987); *Evidence—Expert Witnesses—49 C.F.R. § 835*, 51 J.Air L. & Com. 243 (1985); Podhurst, *The Use of NTSB and FAA Reports and Other Documents Under the New Federal Rules of Evidence*, 12 Forum 180 (1976).

7. The Rule 803(6) exception to the hearsay rule provides for the admissability of:
 A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum,

record relied upon by the maker and its employer in the ordinary or regular course of their business. A firm's independent motivation for creating reliable business records obviates the need for sworn testimony and cross-examination. A business record is admissable under Rule 803(6) where a sufficient foundation for reliability is established by the business's custodian of records, or other qualified representative: A record of acts, opinions, events or diagnoses is admissable in any form if (1) the record is made at or near the time of the occurrence of the events or the drawing of opinions or conclusions, (2) by or from information transmitted by a person with knowledge of that occurrence or opinion, (3) the record is kept in the course of a regularly conducted business activity, and (4) the ordinary course of that business activity includes the making of such records.

At trial, a personnel executive employed by American Airlines testified to company procedures for developing prospective employee files, and that these procedures were followed in regard to the application of Lee Bruecher. The executive testified to the considerable reliance that the airline places on these files in evaluating prospective employees, and the manner in which various documents not created by American Airlines come to be placed in applicant files. The issue presented is whether the Abel letter could be admitted along with the other contents of the American Airlines file. The basis of the objection to its inclusion is that (1) the witness was unable to testify as to how that particular document came to be in the file, (2) Mr. Abel testified that the letter was not solicited by American Airlines, and (3) Mr. Abel also testified that the letter recommending co-pilot Bruecher did not accurately reflect his opinion of the applicant's skill as a pilot. Mr. Abel had testified via videotape that Bruecher's inability to pass certain Federal Aviation Administration performance tests had led to his dismissal from Abel Aviation and would prevent him from being rehired.

Testimony of the American Airlines personnel executive demonstrated that the American Airlines file meets each element of admissability under Rule 803(6). A persuasive factor in favor of admissability is the fact the internal system producing personnel files is relied upon by the airline to select pilots for its commercial transport training program. Testimony demonstrated that the jury could also rely on the fact that American Airlines found the contents of the file relevant to its hiring decisions.

The Abel letter is admissable by virtue of its inclusion in the American Airlines personnel file. The letter is authenticated by the letterhead of Abel Air. Mr. Abel identified the letter and his signature. A duplicate letter of recommendation had been sent to Continental and was authenticated and explained by Mr. Abel during his own video deposition. Mr. Abel's testimony demonstrated the conflict between the statements in the recommendation and his actual evaluation of co-pilot Bruecher's performance at Abel Aviation. Furthermore, plaintiffs' expert in airline operations, Mr. Frank Rox, a former Delta Airlines executive, testified that his review of Continental Airline's personnel records disclosed a copy of the letter in its file on co-pilot Bruecher.

The letter, previously identified and explained by Mr. Abel, its author, need not be excluded as inadmissable double-hearsay. *See* Fed.R.Ev. 805 (hearsay within hearsay not excluded if independently admissible). The letter itself is admissable on two grounds. First, as offered through the American Airlines file the letter is not hearsay. The letter was not offered for the truth of the matter asserted. The letter was offered to demonstrate that other airlines gather and consider the same information as defendant Continental relied upon to hire Bruecher as a DC–9 First Officer. *See* Fed.R.Ev. 801(c). Second, even if the letter is hearsay, it is admissable through the catch-all exception of Rule 803(24) of the Federal Rules of Evidence.[8]

report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or method or circumstances of preparation indicate lack of trustworthiness.

8. Rule 803(24) states:

 A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthi-

*See also* Fed.R.Ev. 804(b)(5) (similar exception applicable to statements of inherent reliability when declarant is unavailable to testify). Cross-examination of the letter's author placed the contents of the letter in context—the jury was aware that the letter did not reflect an expert opinion on Bruecher's qualifications. In these circumstances, the "reliability" of the letter was no longer at issue. There is little risk that the letter could have been perceived as anything more than it actually was—an obligatory letter of recommendation for a departing employee. The letter simply does not present the risks normally associated with hearsay evidence.

The American Airlines file on applicant Lee Bruecher, is properly admitted, including the letter from Gary Abel to American Airlines.

### III.

Deposition Testimony of Unavailable Witnesses Rule 32(a)(3) of the Federal Rules of Civil Procedure Rule 804(b)(1) of the Federal Rules of Evidence

During presentation of their case-in-chief, plaintiffs sought to offer the deposition of Mr. Harry Langdon under Rule 32(a)(3)(B) of the Federal Rules of Civil Procedure.[9] Mr. Langdon lives in California, and plaintiffs represented that he chose not to appear in court. Defendants objected to the admission of Mr. Langdon's deposition in lieu of his testimony at trial.[10] The issue presented is two-fold: (1) wheth-

er Rule 32(a)(3)(B) requires the court to accept depositions offered in lieu of testimony by a witness who lies beyond the court's subpoena power, and (2) whether the deposition of an expert witness, limited in scope under Rule 26(b)(4) of the Federal Rules of Civil Procedure, satisfies the former testimony exception to the hearsay rule articulated in Rule 804(b)(1) of the Federal Rules of Evid. Procedure. The parties disputed whether Mr. Langdon's deposition had actually been subject to the limitations imposed on expert discovery.

Although Rule 32 provides a mechanism for presentation of deposition testimony, the rule does not alter the judicial preference for direct and cross-examination of a witness at trial. *Salsman v. Witt*, 466 F.2d 76, 79 (10th Cir.1972). In *Salsman*, the court observed that the Rule 32 restrictions are drawn from the common law principle that testimony by deposition is less desirable than oral testimony in court. *Id.* (citing cases). Deposition testimony is an imperfect substitute for personal testimony which should only be used when the witness is unavailable. *Napier v. Brossard*, 102 F.2d 467 (2d Cir.1939) (Friendly, J. "The deposition has always been, and still is, treated as a substitute, a second-best, not to be used when the original is at hand."). Rule 32 itself does not distinguish between depositions taken for discovery purposes and depositions taken for the preservation of testimony. *United States v. IBM*, 90 F.R.D. 377, 380 (S.D.N.Y.1981).

---

ness [is admissable], if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. (The rule goes on to require that the opponent be given sufficient notice of the statement and the whereabouts of the declarant to allow the opponent to meet the statement).

*See also* Annotation, *Admissability of Statement under Rule 803(24) of Federal Rules of Evidence, Providing for Admissability of Hearsay Statement Not Covered by Any Specific Exception but Having Equivalent Circumstantial Guaranties of Trustworthiness*, 36 A.L.R.Fed. 742 (1978).

**9.** Rule 32(a)(3)(B) states:

At trial or upon hearing of a motion in an interlocutory proceeding, any part or all of a deposition, so far as admissible under the rules of evidence applied as though the witness were then present and testifying, may be used against any party who was present at the taking of the deposition or had reasonable notice thereof, in accordance with the following provisions: ... (3) The deposition of a witness, whether or not a party, may be used by any party for any purpose if the court finds: ... (B) that the witness is at a greater distance than 100 miles from the place of trial or hearing, or is out of the United States, unless it appears that the absence of the witness was procured by the party offering the deposition; ...

**10.** *See* Section IV., *infra*, discussing alternative methods for the presentation of testimony by deposition.

The Rule recognizes that the Federal Rules of Evidence separately limit the admissability of such testimony. Fed.R. Civ.P. 32(a); *see also* Fed.R.Civ.P. 43(a) (form of testimony); Fed.R.Ev. 611(a) (court to exercise reasonable control over the mode and order of interrogation at trial, the advisory Committee comment states, "[various questions] which can be solved only by the judge's common sense and fairness in view of the particular circumstances."). Former testimony is admissable as an exception to the hearsay rule when the party opposing its admission had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination. Fed.R.Ev. 804(b)(1).[11] The party seeking to admit the deposition must prove that the requirements of both Rule 32(a)(3) and Rule 804(b)(1) have been met. *United States v. Pelton,* 578 F.2d 701, 709 (8th Cir.), *cert. denied sub nom.,* 439 U.S. 964, 99 S.Ct. 451, 58 L.Ed.2d 422 (1978). Under Rule 32 and the Rules of Evidence, the admission of deposition testimony in lieu of oral testimony lies in the sound discretion of the trial court. *Reeg v. Shaughnessy,* 570 F.2d 309, 316–17 (10th Cir.1978); *see also Rascon v. Hardiman,* 803 F.2d 269, 277 (7th Cir.1986); *Alfonso v. Lund,* 783 F.2d 958, 961 (10th Cir.1986); *Sims Consolidated, Ltd. v. Irrigation and Power Equipment, Inc.,* 518 F.2d 413, 418 (10th Cir.), *cert. denied,* 423 U.S. 913, 96 S.Ct. 218, 46 L.Ed.2d 141 (1975).

Each of these principles combine to form a single test to determine the admissability of deposition testimony in lieu of testimony at trial. Because of the judicial preference for personal testimony in court, the court must balance various factors toward the ends of fairness: (1) offeror's need for the evidence to be presented through the deposition, (2) opportunity provided the opponent to cross-examine the deposition witness on those issues, (3) nature of the evidence to be presented, (4) jury's need to observe the demeanor and credibility of the witness, and (5) actual unavailability of the witness, as distinguished from mere geographic distance from the courthouse.

At trial, the court found that the need for oral testimony in court weighed heavily against admission under Rule 32. Relevancy and the foundation for opinion testimony remained at issue and would need to be reviewed by the court throughout the testimony. Furthermore, because the deposition testimony appeared subject to various interpretations the need for the jury to observe the demeanor of the witness to determine credibility was substantial. Plaintiffs. designated and presented Mr. Langdon for his expertise in the area of federal regulation of airlines in general, and Continental Airlines in particular. The witness's opinions and observations could only be afforded the appropriate weight through complete direct and cross-examination before the finder of fact.

Plaintiffs' sole basis for their assertion of unavailability was that Mr. Langdon lived outside the 100 mile radius established by Rule 32. Plaintiffs specifically denied that Mr. Langdon was unavailable due to illness or job related commitments. Under the circumstances, the ability of the jury to personally consider and evaluate the witness's credibility was of paramount concern. Mere inconvenience to the witness does not outweigh the substantial need to evaluate the demeanor of a witness presenting controversial testimony of questionable relevance. Nor does inconvenience outweigh the unfairness of limiting an opponent's right to demonstrate varying interpretations of the facts on which the witness bases his testimony. Considerations of fairness are particularly important when the offering party fails to met the burden of establishing that the deposition is admissible as hearsay within the exception of Rule 804(b)(1). We affirm our order

---

11. Rule 804(b) states:

The following are not excluded by the hearsay rule if the declarant is unavailable as a witness: (1) Former Testimony. Testimony given as a witness at another hearing of the same or a different proceeding, or in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered, or, in a civil action or proceeding, a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.

that Mr. Harry Langdon would not be permitted to testify via deposition.

IV.

Summarization of Testimony and Depositions at Trial Rule 1 of the Federal Rules of Civil Procedure Rule 611 of the Federal Rules of Evidence

Trial courts possess considerable discretion to determine the orderly presentation of evidence. *Thweatt v. Ontko*, 814 F.2d 1466, 1470 (10th Cir.1987). The court has the inherent power to develop tools and procedures for the presentation of evidence toward the end just, speedy, and efficient litigation. *Id.; Nigh v. Dow Chemical Co.*, 634 F.Supp. 1513, 1517–18 (D.Wis.1986). Both the Federal Rules of Civil Procedure and of Evidence recognize that this power exists for application through various means depending on the circumstances of particular cases. Fed.R.Ev. 611(a); [12] Fed. R.Civ.P. 1; [13] *see also* Weinstein & Berger, Weinstein's Evidence, ¶ 611[01] (1988). In exercising control over the proceedings, the court may limit presentation of cumulative evidence. *MCI Communications Corp. v. American Tel. & Tel. Co.*, 708 F.2d 1081, 1171 (7th Cir.) (citing cases holding parties not entitled to burden court with unending stream of cumulative evidence), *cert. denied*, 464 U.S. 891, 104 S.Ct. 234, 78 L.Ed.2d 226 (1983). To this end the court may limit the amount of time available to each side, within the bounds of reasonable

flexibility, and may exclude relevant evidence in order to promote administration of the judicial process. *Thweatt*, 814 F.2d at 1470; *Johnson v. Ashby*, 808 F.2d 676, 678 (8th Cir.1987); *MCI*, 708 F.2d at 1171; *see also* Fed.R.Ev. 403.[14] The power of a trial judge to administer just and efficient proceedings is not limited to ruling on procedural and evidentiary objections, but is an affirmative duty to avoid delay through the ambit Rule 611(a) and other principles. *Cranberg v. Consumers Union, Inc.*, 756 F.2d 382, 391 (5th Cir.1985) (citing cases), *cert. denied*, 474 U.S. 1097, 106 S.Ct. 872, 88 L.Ed.2d 911 (1986).

Rather than limit the time available for the presentation of evidence a two modes of summary testimony were utilized. Attorneys agreed to summary presentation of the testimony and depositions of several witnesses. The primary method of summary testimony involves summarization of the relevant portions of a deposition in a one or two page narrative, prepared by the offering attorney. Opposing counsel is given an opportunity to review the summary and the deposition for accuracy. The offering attorney then reads a stipulated narrative summary to the jury.[15]

During the course of trial, disagreements as to the contents of certain deposition summaries arose. Some disputes were resolved either by presentation of the transcript and proposed summaries to the court for in camera review. At

12. Rule 611(a) states:
The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment.

13. Rule 1 states: "[The Rules] shall be construed to secure the just, speedy and inexpensive determination of every action."

14. Rule 403 states:
Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading of the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

15. For example, the deposition of William C. Jordan, was presented to the jury by an attorney who read the following stipulated summary:
William C. Jordan testified under oath by way of deposition on October 14, 1988. Mr. Jordan is a private investigator with offices in Westlake, California. He owns WCJ, Inc. which did the background check regarding Lee Bruecher. Mr. Jordan is a former detective with the Los Angeles Police Department. Mr. Jordan testified that his company's basic procedure was to try and confirm employment for the 5 year period preceding the investigation with respect to new hire pilots. His company was not requested to inquire as to whether or not a new hire pilot had failed any FAA examinations or check rides.
It was the standard practice of WCJ, Inc. to provide a verbal report on the background investigations within 3 working days and a written report within 5 working days.

other times, opposing counsel was allowed to supplement the summary by reading limited portions of the deposition transcript to the jury. The summary deposition approach was particularly useful in presenting testimony of plaintiff Karen Johnson's rehabilitation practitioners whose professional commitments prevented travel from Boise, Idaho to Denver, Colorado for trial. The approach was also useful in presenting corroborative testimony on various issues, lessening the delay of repetitive testimony. Because the applicability of summary testimony is tempered by the court's preference for oral testimony in court, the parties were neither requested nor allowed to present the testimony of key witnesses in summary form. The use of summary deposition testimony in narrative form is a legitimate exercise of the court's inherent powers and authority under Rule 611. *Walker v. Action Indus., Inc.*, 802 F.2d 703, 712 (4th Cir.1986), *cert. denied*, 479 U.S. 1065, 107 S.Ct. 952, 93 L.Ed.2d 1000 (1987); *United States v. Young*, 745 F.2d 733, 761 (2d Cir.1984) (decision to allow summary testimony reviewed for abuse of discretion), *cert. denied*, 470 U.S. 1084, 105 S.Ct. 1842, 85 L.Ed.2d 142 (1985); *Nigh v. Dow Chemical Co.*, 634 F.Supp. 1513, 1517–18 (D.Wis.1986).

The second method of summary testimony involves the reading of a narrative statement of a witness's direct testimony while the witness is in court, under oath. The presenting attorney reads a summary of direct examination. The witness is then asked to supplement or correct the attorney's statement, under oath, again in narrative form. Testimony then proceeds through traditional cross and redirect examination. This method of presenting evidence is most useful in presenting the testimony of witnesses who appear to corroborate the testimony of key witnesses. In this trial for example, two of several passengers testified to their observations of the aircraft, events and weather conditions testified through the modified summary form.

Development of techniques for the summary presentation of evidence is recommended in complex litigation. Manual for Complex Litigation, Second, § 22.332 (1985). In this case, the parties were advised at status conferences and in the trial practice order entered by the court that summary presentation of evidence would be encouraged and that summaries should be prepared in advance. *See In re Air Crash Disaster and Stapleton Int'l Airport*, Order MDL 751–17, 720 F.Supp. 1455, 1461 (D.Colo. Nov. 29, 1988).

No objections to either approach were raised at trial. Plaintiffs objected to the approach for the first time in post-trial motions. Plaintiffs alleged that the presentation of a crash victim's testimony in summary form denied that victim of his or her rights to jury trial on joined claims for liability. Although untimely, the objection was considered and overruled in our order on post-trial motions. *See* Order MDL 751–33, 720 F.Supp. 1467, 1481 n. 14 (D.Colo. March 10, 1989). Plaintiffs' counsel undertook the summarization of testimony in a professional and efficient manner. In those circumstances where no agreement could be reached as to the contents of a deposition admissable under Rule 32 of the Federal Rules of Civil Procedure, the parties edited extraneous material from several lengthy depositions in a similarly responsible manner. Although the court was called upon to resolve several disputes in during the editing process regarding evidentiary objections, a complete case was presented to the jury with an eye towards fairness and a full opportunity to develop the evidence. Due to the excellent preparation and cooperation of counsel, the efficient application of summary testimony techniques, and elongated trial days, a trial estimated to extend over a six week period was completed in less than three weeks.[16]

---

**16.** We also note that the use of specially designed and precisely organized voir dire techniques resulted in a substantial saving of time in this matter. Because of extensive media coverage of the crash and subsequent NTSB investiga-

tion within Colorado, we undertook extensive juror voir dire. Through the use of juror questionnaires, extensive voir dire acceptable to all parties was concluded within three hours.