### In re AIR CRASH DISASTER AT SIOUX CITY, IOWA, ON JULY 19, 1989.

### This Document Relates To All Cases.

### No. MDL–817.

United States District Court,
N.D. Illinois, E.D.

Dec. 20, 1991.

Philip H. Corboy, Francis Patrick Murphy, Corboy & Demetrio, P.C., Chicago, Ill., David E. Rapoport, Becker, Baizer & Rapoport, Highland Park, Ill., Arthur Alan Wolk, Wolk, Genter & Harrington, Philadelphia, Pa., Kevin M. Forde, Kevin M. Forde, Ltd., Chicago, Ill., for plaintiffs.

John W. Adler, Fred C. Begy III, Richard A. Walker, Adler, Kaplan & Begy, Chicago, Ill., for defendant United Airlines.

Steven L. Hogan, Bryan, Cave, McPheeters & McRoberts, Los Angeles, Cal., Norman J. Barry, Daniel Cummings, Alan S. Madans, Rothschild, Barry & Myers, Chicago, Ill., for defendant McDonnell Douglas.

Charles W. Douglas, Sara J. Gourley, Sidley & Austin, Chicago, Ill., for defendant General Elec.

Michael J. Merlo, Craig A. Chapello, Pretzel & Stouffer, Chicago, Ill., for Titanium Metals.

Michael H. West, Pope, Ballard, Shepard & Fowle, Chicago, Ill., for ALCOA.

### MEMORANDUM OPINION AND ORDER

CONLON, District Judge.

In this consolidated multidistrict litigation stemming from an air crash at Sioux City, Iowa, defendants United Airlines, Inc. and UAL Corporation (collectively "United") and General Electric Company (collectively "defendants') variously move *in limine* to exclude all or part of the National Transportation Safety Board's Aircraft Accident Report concerning the crash of United Airlines Flight 232. Defendants principally contend that the report may not be admitted into evidence or otherwise used at trial pursuant to 49 U.S.C.App. § 1441(e), 49 U.S.C.App. § 1903(c) and 49 C.F.R. § 835.1–.9 (1991).[1]

---

1. General Electric moves for exclusion of the report in its entirety and, alternatively, moves for the exclusion of certain portions of the report. United moves for the exclusion of only certain portions of the report.

## BACKGROUND

On July 19, 1989, United Airlines Flight 232 from Denver to Chicago crashed during an attempted emergency landing at Sioux City, Iowa, after the aircraft lost all hydraulic power. Of the 296 people on board, 112 were killed as a result of the crash. The National Transportation Safety Board ("NTSB" or "the Board") undertook an immediate investigation of the crash, pursuant to its duties under 49 U.S.C.App. §§ 1441 and 1903, to determine the factual circumstances and probable cause of the accident, as well as to recommend measures that might prevent a similar accident from occurring in the future.[2] NTSB investigators compiled information and evidence concerning the Sioux City crash and submitted factual accident reports detailing the evidence uncovered. The NTSB also conducted hearings and subjected certain of the crash evidence to laboratory testing, including tests to determine the origin of a metallurgical flaw in the failed engine's No. 1 fan disk that caused the disk to break apart in mid-flight.

On November 1, 1990, the NTSB published its final "Aircraft Accident Report" ("the report") regarding the Sioux City crash. The report contains a lengthy compilation of all factual information uncovered in the investigation. The report analyzes the factual data and states numerous factual conclusions concerning a number of alternative and competing theories that might explain the cause of certain disputed facts. The report also contains a conclusion section that includes the NTSB's probable cause determinations regarding the ultimate cause(s) of the crash, as well as the probable cause conclusion of a dissenting NTSB member. Finally, the report contains an executive summary restating the NTSB's probable cause determination and a concluding set of recommendations to the Secretary of Transportation and the Federal Aviation Administration regarding measures the NTSB believes might help avoid a similar accident in the future.

Plaintiffs intend to tender the report at trial as evidence in support of their various personal injury, survival action and punitive damages claims. General Electric and United move *in limine* to exclude any use of or reference to the report, either in its entirety or in part, at the upcoming trial on January 13, 1992.

## DISCUSSION

General Electric asserts that 49 U.S.C.App. § 1441(e) and 49 U.S.C.App. § 1903(c) prohibit any use of or reference to the NTSB accident report, either in whole or in part, at trial. 49 U.S.C.App. § 1441(e) states:

> No part of any report or reports of the National Transportation Safety Board relating to any accident or the investigation thereof, shall be admitted as evidence or used in any suit or action for damages growing out of any matter mentioned in such report or reports.

49 U.S.C.App. § 1441(e). Section 1903(c), enacted subsequent to § 1441(e), states a similar prohibition on the use of NTSB reports in almost identical language.[3] The interpretation of these statutory provisions is an issue of first impression in this jurisdiction.

The unequivocal wording of sections 1441(e) and 1903(c) appears to leave no room for creative interpretation. The language, on its face, states an absolute bar to

---

**2.** Section 1441 states:

(a) It shall be the duty of the National Transportation Safety Board to—

. . . . .

(2) investigate [ ] accidents and report the facts, conditions, and circumstances relating to each accident and the probable cause thereof;

(3) Make such recommendations to the Secretary of Transportation as, in its opinion, will tend to prevent similar accidents in the future. . . .

49 U.S.C.App. § 1441(a)(2) & (3)

**3.** Section 1441(e) was enacted in its present form in 1958 and is part of the statutory provisions generally addressing the investigation of aircraft accidents. Section 1903(c), contained in the general provisions outlining the powers and duties of the National Transportation Safety Board, was enacted as part of the Independent Safety Board Act of 1974, Pub.L. 93–633, Title III, 88 Stat. 2168 (1975), which gave the National Transportation Safety Board independent agency status.

the use of NTSB reports in the present action. *See Protectus Alpha Navigation Co. v. North Pacific Grain Growers, Inc.,* 767 F.2d 1379, 1384–85 (9th Cir.1985); *Benna v. Reeder Flying Serv., Inc.,* 578 F.2d 269 (9th Cir.1978). However, plaintiffs advance a facially improbable interpretation of sections 1441(e) and 1903(c) by other courts that permits large portions of NTSB accident reports to be admitted into evidence at civil trials, notwithstanding the unequivocal nature of the statutory prohibition.

Foremost among the cases plaintiffs cite is *In re Air Crash Disaster at Stapleton International Airport,* 720 F.Supp. 1493 (D.Colo.1989). As in the present case, the district court in *In re Air Crash* presided over consolidated multidistrict litigation stemming from a commercial aircraft crash. Plaintiffs offered into evidence the NTSB accident report, but voluntarily excluded the NTSB's probable cause determinations, executive summary and recommendations. Defendants objected to the admission or use of any portion of the report, urging the court to adopt the literal construction of § 1441(e) applied by the Ninth Circuit. *Id.* at 1495–96.

The district court determined that it was bound by an interpretation of § 1441(e) purportedly advanced in a Tenth Circuit case, *Keen v. Detroit Diesel Allison,* 569 F.2d 547 (10th Cir.1978). In *Keen,* the Tenth Circuit gleaned the congressional intent that lay behind § 1441(e) in the context of determining whether a district court had erred in permitting NTSB accident investigators to testify to their factual observations of a crash site. The *Keen* court concluded that the admission of the investigators' factual testimony was not error because § 1441(e) does not act as a "total prohibition" on the admission of investigation evidence, but rather was intended only as a bar to the admission of conclusions or opinions more properly left to a jury. *Keen,* 569 F.2d at 549–51; *In re Air Crash,* 720 F.Supp. at 1496. Applying the Tenth Circuit's reasoning in *Keen,* the district court in *In re Air Crash* concluded that the NTSB accident report was admissible as evidence at trial except for those portions of the report that contained the NTSB's probable cause conclusions.

The *In re Air Crash* application of *Keen* to the question of the admissibility of NTSB reports into evidence at trial is flawed for a number of reasons. First, as noted above, *Keen* did not address the admissibility of an NTSB report, but rather addressed the admissibility of certain types of NTSB investigator testimony. This distinction is significant in light of the fact that the NTSB and its predecessor, the Civil Aeronautics Board, have long permitted agency investigators to provide testimony as to the factual information the investigators personally obtained in the course of conducting their factual investigations.

National Transportation Safety Board regulations, promulgated pursuant to 49 U.S.C.App. § 1441 and 49 U.S.C.App. § 1903 and amended as recently as October 1990, maintain a clear and unequivocal distinction between evidentiary use of NTSB reports and investigator testimony. Reiterating the clear import of the statutory prohibitions, the current NTSB regulations expressly state that no part of any NTSB report "may be admitted as evidence or used in any suit or action for damages growing out of any matter mentioned in such reports." 55 Fed.Reg. 41541 (1990) (to be codified at 49 C.F.R. 835.2 (1991)). NTSB employees are permitted to give testimony in a civil action, but *"only ... as to factual information they obtained during the course of an investigation."* 55 Fed. Reg. 41541 (1990) (to be codified at 49 C.F.R. 835.4 (1991)). The current regulations further prohibit investigators from testifying in court, and instead limit NTSB employee testimony to deposition form. 55 Fed.Reg. 41541 (1990) (to be codified at 49 C.F.R. 835.2 (1991)). In giving deposition testimony, a NTSB employee may refer to his "factual accident report" to "refresh his memory." 835.4 Fed.Reg. 41541 (to be codified at 49 C.F.R. 835.4. But, *"[c]onsistent with section 701(e) of the FA Act [49 U.S.C.App. § 1441(e) ] and section 304 of the Safety Act [49 U.S.C.App. § 1903(c) ], a [NTSB] employee may not*

*use the [NTSB's] accident report for any purpose during his testimony." Id.* (emphasis added).[4] Thus, even in permitting employee testimony as to certain investigatory matters, the NTSB continues to adhere to the absolute ban on the use of NTSB accident reports.

Courts have long held that one of the underlying Congressional purposes animating § 1441(e) is "to preserve the functions of court and jury uninfluenced by the findings of the Board or investigators." *Universal Airline, Inc. v. Eastern Air Lines, Inc.,* 188 F.2d 993, 1000 (D.C.Cir.1951) (stated in reference to precursor to § 1441(e)); *Keen,* 569 F.2d at 549–51. However, that purpose does not require the conclusion advanced in *In re Air Crash* and by the present plaintiffs that Congress intended to permit the admission into evidence of all NTSB reports except for those portions stating probable cause conclusions, notwithstanding the absolute and unequivocal statutory language to the contrary. Congress plainly chose to serve its purpose of preventing NTSB data from "usurp[ing] the function of the jury" by absolutely barring admission of NTSB reports, while permitting limited testimony from NTSB employees. *Id.*

A principal reason for the distinction regarding the admissibility of NTSB reports and investigator testimony is revealed in *Universal Airline,* one of the foundational cases interpreting the precursor to sections 1441(e) and 1903(c). *Universal Airline* stemmed from litigation over an air crash that had been investigated by the Civil Aeronautics Board, the predecessor of the NTSB. The trial court compelled the attendance and testimony of a Civil Aeronautics Board investigator at trial. The trial court also ordered the investigator to produce all Board reports, orders or private files regarding the accident. The Civil Aeronautics Board objected to the orders.

On appeal, the circuit court noted the Civil Aeronautics Board's concession that investigator testimony may be essential to the proper resolution of accident litigation because the public is often excluded from the scene of serious accidents. Thus, Board investigators are often the only persons competent to testify to post-accident conditions. The court thus held that while an order to compel the production of Board reports was plainly error, the trial court did not err in ordering the testimony of the investigator, although it was advisable to have ordered that the testimony be taken in deposition form.[5] *Universal Airline,* 188 F.2d at 999–1000.

The reason for the distinction between the evidentiary use of investigator testimony and NTSB accident reports highlighted forty years ago in *Universal Airline* remains vital today is reflected in current NTSB regulations. In making the leap from the admission of investigator testimony to the admission of NTSB reports, the court in *In re Air Crash* appears to have overlooked the significance of and reasons for the distinction between investigator testimony and NTSB reports long maintained by Congress, the NTSB and its predecessor, and the courts. Plaintiffs here appear to make the same mistake. Many of the other cases they cite as supporting an interpretation of sections 1441(e) and 1903(c) permitting the admission of NTSB reports are inapposite. Those cases solely involved questions regarding the admission or proper scope of testimony of NTSB investigators.[6] *See Berguido v. Eastern Air Lines,*

---

**4.** The regulations draw a critical definitional distinction between a "Factual accident report," which is an individual investigator's report of the accident, and the "Board's accident report," which is the report containing the NTSB's determinations as drawn from the compiled factual accident reports of the NTSB's individual investigators and any hearings and testing the NTSB might itself order. *See* 55 Fed.Reg. 41541 (1990) (to be codified at 49 C.F.R. § 835.2 (1991)).

**5.** *Universal Airline* preceded Board regulations prohibiting investigators from testifying in person.

**6.** Other cases cited by the present plaintiffs in support of their proposed interpretation offer no more than dicta regarding the interpretation of § 1441(e) that oftentimes cite to other cases involving investigator testimony issues. *See Travelers Ins. Co. v. Riggs,* 671 F.2d 810, 816 (4th Cir.1982); *Texasgulf, Inc. v. Colt Electronics Co.,* 615 F.Supp. 648, 651 n. 5 (S.D.N.Y.1984).

*Inc.,* 317 F.2d 628, 632 (3d Cir.), *cert. denied,* 375 U.S. 895, 84 S.Ct. 170, 11 L.Ed.2d 124 (1963) (admissibility of hearsay testimony of NTSB employee); *Kline v. Martin,* 345 F.Supp. 31, 32 (E.D.Va.1972) (sole question was whether NTSB employees had to answer certain propounded questions in discovery depositions); *see also Lobel v. American Airlines, Inc.,* 192 F.2d 217, 220 (2d Cir.1951), *cert. denied,* 342 U.S. 945, 72 S.Ct. 558, 96 L.Ed. 703 (1952) (issue was whether investigator's factual accident report relied upon by investigator to refresh memory and used to cross-examine investigator in deposition could be admitted into evidence); *Curry v. Chevron, USA,* 779 F.2d 272 (5th Cir.1985) (plaintiff's expert should not have been permitted to testify that his conclusions were based on NTSB report).

A second reason for declining to follow the *In re Air Crash* construction of sections 1441(e) and 1903(c) is found in a recent Tenth Circuit opinion that appears to recognize the absolute nature of the § 1441(e) prohibition and characterizes the holding in *Keen,* upon which *In re Air Crash* so critically depends, as relating solely to investigator testimony. In *Thomas Brooks Chartered v. Burnett,* 920 F.2d 634 (10th Cir.1990), the Tenth Circuit reversed a district court ruling requiring the NTSB to permit the representative of an individual who was killed in a plane crash to observe the NTSB's investigation of the manufacturer of a downed plane. In reversing the district court, the Tenth Circuit offered the following summary of the evidentiary use of NTSB information and resources:

> Consistent with its fact-finding mission that is litigation neutral, NTSB reports are barred as evidence in court. 49 U.S.C.App. § 1441(e). *See also* 49 U.S.C.App. § 1903(c). Board employees may give limited testimony concerning the "factual information they obtained during the course of the accident investigation, including factual evaluations embodied in their factual accidents reports. 49 C.F.R. § 835.3(b). When making these statements, Board employees may refer to their reports to refresh their recollection. 49 C.F.R. § 835.4. *See, e.g., Keen v. Detroit Diesel Allison,* 569 F.2d 547, 549-51 (10th Cir.1978) (NTSB investigator and FAA maintenance supervisor may testify as to what they observed at an accident scene and the manner in which they conducted their investigations but may not testify as to the proximate cause of the crash).

*Thomas Brooks* 920 F.2d at 639 (parenthetical omitted). Although this passage was not critical to the disposition of *Thomas Brooks,* it is significant to the extent that it reflects the Tenth Circuit's present understanding of the different evidentiary treatment accorded investigator testimony and NTSB accident reports; an understanding that appears to be directly at odds with the holding in *In re Air Crash.*

One final reason mitigates against the acceptance of the *In re Air Crash* interpretation of § 1441(e) and § 1903(c) now advanced by plaintiffs. Once the absolute statutory bar to admission of NTSB reports is breached, the purposes of sections 1441(e) and 1903(c) are likely to be further compromised by the application of the Federal Rules of Evidence to the determination of the admissibility of most NTSB reports.

Those few federal courts that have formally held that sections 1441(e) and 1903(c) permit the admission of NTSB reports have concluded that Fed.R.Evid. 803(8) necessarily governs the admissibility of most portions of the NTSB reports. *See In re Air Crash,* 720 F.Supp. at 1497-99; *Budden v. United States,* 748 F.Supp. 1374, 1377-78 (D.Neb.1990).[7] Rule 803(8) creates an exception to the hearsay rule in civil actions for the following types of evidence:

**7.** Notably, no federal court of appeals has expressly adopted the *In re Air Crash* interpretation of sections 1441(e) and 1903(c) in a case that directly poses the issue of the admissibility of an NTSB accident report. Indeed, only the Ninth Circuit has ruled directly on the point, and it has adhered to the literal and unambiguous language of the statutes. *See Protectus Alpha Navigation Co. v. North Pacific Grain Growers, Inc.,* 767 F.2d 1379 (9th Cir.1985); *Benna v. Reeder Flying Serv., Inc.,* 578 F.2d 269 (9th Cir.1978).

Records, reports statements, or data compilations, in any form, of public offices or agencies, setting forth ... factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness.

Fed.R.Evid. 803(8). The Supreme Court has broadly construed the term "factual findings," as stated in Rule 803(8), to permit the admission into evidence of opinions and conclusions drawn from factual investigation. *Beech Aircraft Corp. v. Rainey,* 488 U.S. 153, 161–70, 109 S.Ct. 439, 445–50, 102 L.Ed.2d 445 (1988).[8] An interpretation of sections 1441(e) and 1903(c) permitting admission of NTSB reports into evidence, when combined with the broad construction now accorded Rule 803(8), poses the possibility that a vast array of NTSB conclusions and opinions that stop short of an ultimate determination of probable cause are likely to be admissible in civil actions.

*In re Air Crash* itself provides evidence of this likely result. Applying the Supreme Court's interpretation of Rule 803(8) in *Rainey,* the district court *In re Air Crash* observed that the NTSB accident report was presumptively admissible and that the party opposing its admission therefore bore the burden of demonstrating the untrustworthiness of the report. *In re Air Crash,* 720 F.Supp. at 1497. Where an opponent to the admission of an NTSB accident report may demonstrate that an NTSB investigator has relied upon hearsay, a court may edit out the resulting portion of the accident report. The edited accident report is otherwise admissible due to the assumption of trustworthiness that attaches to the government investigation as a whole. *Id.* at 1497–98. However, even otherwise inadmissible portions of the NTSB report, other

than the Board's probable cause determination, may be admissible as a means of impeachment. *Id.* at 1498–99. Thus, the conclusion to be drawn from *In re Air Crash* is that all portions of an NTSB accident report are potentially admissible save for the Board's determination of probable cause.

In the present actions, the NTSB probable cause determination comprises a solitary paragraph of the densely worded, single-spaced 123 page NTSB accident report regarding the Sioux City, Iowa crash.[9] Not only is it illogical to admit into evidence so large a portion of the NTSB's accident report under a statute that prohibits its use absolutely, but also the potentially admissible nature of the remainder of the report, following the conclusion compelled by *In re Air Crash,* would likely place the NTSB's investigation, findings of fact and non-probable cause determinations at the center of the upcoming trial. Such an occurrence is directly at odds with the section 1441(e) and section 1903(c) absolute statutory bar to use of NTSB reports in civil trials, which reflect Congress' "strong ... desire to keep the Board free of the entanglement of such suits." S.Rep. 1192 93d Cong., 2d Sess. 44 (1974), quoted in 49 C.F.R. § 835.3(a) (as reported in 55 Fed. Reg. 41541 (1990)).

In light of the above reasons, the court declines to adopt the *In re Air Crash* interpretation of sections 1441(e) and 1903(c). Plaintiffs offer no other reason, nor can this court discern any other reason, that might justify an application of sections 1441(e) and 1903(c) that compromises unambiguous prohibitory language absolutely barring the use of NTSB accident reports at trial.

---

**8.** The government report at issue in *Rainey* was a Navy Judge Advocate General's report into the cause of Navy jet crash. Accidents involving solely military aircraft are not investigated by the NTSB, but by military authorities in cooperation with the Office of the Secretary of Transportation. *See* 49 U.S.C.App. § 1442. *Rainey* therefore did not involve the application of either 49 U.S.C.App. 1441(e) or 49 U.S.C.App. 1903(c), each of which relates solely to the NTSB. Accordingly, the Court was concerned

only ·with the interpretation of Fed.R.Evid. 803(8).

**9.** The NTSB's probable cause findings are restated in a single paragraph in the executive summary section of the accident report. The probable cause determination of a dissenting NTSB member covers little more than an additional page of the report.

## CONCLUSION

General Electric's motion *in limine* to exclude the admission into evidence or other use of the National Transportation Safety Board Accident Report regarding the July 19, 1989 crash of United Flight 232 at Sioux City, Iowa, at trial is granted. The motions of both General Electric and United to exclude the admission or use of certain portions of the report are denied as moot.