**UNITED STATES of America, Plaintiff,**

v.

**Kevin G. TOBIN, Defendant.**

**Criminal Action No. 98–10106–WGY.**

United States District Court,
D. Massachusetts.

Oct. 30, 1998.

John M. Hodgens, Jr., Economic Crimes Unit, United States Law Office, Boston, MA, Victor A. Wild, United States Attorney's Office, Boston, MA, for U.S.

Richard I. Clayman, Voke, Clayman & McLaughlin, PA, Chelsea, MA, for Kevin G. Tobin, defendant.

## MEMORANDUM AND ORDER

YOUNG, District Judge.

Kevin G. Tobin pled guilty on April 20, 1998 to one count of income tax evasion in violation of 26 U.S.C. § 7207 and one count of mail fraud in violation of 18 U.S.C. § 1341. Both counts involved a fraudulent scheme to evade the payment of workers' compensation insurance premiums. This Court sentenced Tobin on August 25, 1998 to a term of 15 months in prison followed by three years of supervised release, and ordered him to pay a fine of $7,500. The Court at that time took under advisement the matter of restitution pursuant to the Victim and Witness Protection Act, 18 U.S.C. § 3663. During the interim, both the government and the defendant have filed memoranda of law addressing the facts of the case and the applicable law.

The government focuses its analysis on whether restitution is permissible, discretionary, or mandatory for each of the three alleged victims. In order for the Court to award restitution, however, the Court must first determine that the three insurers have suffered loss. Because the Court determines that the putative victims have not suffered any loss beyond whatever claims were actually paid, the Court declines to order restitution in the amount sought by the government.

## DISCUSSION

Tobin owns and operates Tobin & Sons, a moving and storage firm in Peabody, Massachusetts. Beginning in or about December, 1994, and continuing until approximately February, 1996, Tobin provided insurance auditors from St. Paul Fire & Marine Insurance Company with false information concerning the wages paid to his employees. In addition, as part of the same scheme, Tobin similarly misled Cigna Insurance Company from 1991 to 1993 and American International Group Insurance Company from 1995 to 1997. Since workers' compensation insur-

ance premiums are based, in part, on the wages paid to each employee, Tobin's understatement of payroll amounts allowed him to evade substantial additional insurance premiums.

■ The Court has discretion to order restitution under the Victim and Witness Protection Act, 18 U.S.C. § 3663, to any person "directly and proximately harmed as a result of the commission of an offense." 18 U.S.C. § 3663(a)(2). Under 18 U.S.C. § 3663A(a)(1) & 3663A(c)(1), which the government argues apply to some of the conduct in this case, the Court must order such restitution. If an offense involves as an element a scheme, conspiracy, or pattern of criminal activity, a victim may be any person harmed by the defendant's conduct in the course of that scheme, conspiracy, or pattern of activity, whether or not the harm was caused by conduct actually charged. See 18 U.S.C. 3663(a)(2) & 3663A(a)(2); United States v. Hensley, 91 F.3d 274, 277 (1st Cir.1996).

■ The statute does not explicitly define the element of harm. It does direct the sentencing court to take into consideration in determining whether to order restitution "the amount of the loss sustained by each victim as a result of the offense," as well as "the financial resources of the defendant, the financial needs and earning ability of the defendant and the defendant's dependents, and such other factors as the court deems appropriate." 18 U.S.C. 3663(a)(1)(B)(i).[1] The Court need not order restitution if the process of fashioning such an order would so complicate and prolong the sentencing process that the delay would outweigh the need to compensate victims of the crime. See 18 U.S.C. § 3663(a)(1)(B)(ii). If a court determines that a restitution order is appropriate, the statute specifically describes the measure of restitution. In the case of an offense resulting in loss of property, restitution is the return of the property or the value of the

property that has been lost. See 18 U.S.C. § 3663(b)(1) & 3663A(b)(1). These provisions thus restrict the restitutionary order to the value of property lost by the insurance companies as a result of Tobin's crime. See, e.g, United States v. Messner, 107 F.3d 1448, 1455 (10th Cir.1997) (contrasting the calculation of restitution with the determination of loss under the Sentencing Guidelines, which permit the use of "actual or intended loss"). The government bears the burden of proving the value of the loss. See 18 U.S.C. § 3664(e).

■ The government takes the position that the loss to the victims in this case must be measured by the difference between the premiums Tobin actually paid and the premiums he would have been charged had he accurately reported his payroll information. The court in United States v. Garavaglia, 5 F.Supp.2d 511 (E.D.Mich.1998), appears to be the only court to have reached this precise conclusion. In that case, the defendant had fraudulently understated payroll expenditures to his workers' compensation insurer, thereby evading substantial premium amounts. The court calculated the loss amount, just as the government urges here, by netting the premiums that reasonably could have been collected based on actual payroll data against the premiums actually paid.[2] See Garavaglia, 5 F.Supp.2d at 520. It is undisputed that the premium underpayment in this case amounts to $475,731.00.

Tobin, not surprisingly, takes a different view of the matter. He acknowledges that his gain from the fraudulent premium evasion was $475,731.00, but maintains that the figure overstates the insurance companies' loss. Tobin takes the position that the actual losses suffered by the insurance companies as a result of his fraud are limited to the amount actually paid on the single workers' compensation claim he avers was filed under

---

1. Congress eliminated substantially identical language from section 3664, but inserted this language as section 3663(a)(1)(B), replacing only the phrase "any victim" with the phrase "each victim." See Antiterrorism and Effective Death Penalty Act, Pub.L. No. 104–132, § 205(a)(1)(E), 110 Stat. 1214, 1229 (1996). Both versions mandate essentially the same inquiry.

2. The court actually reduced this figure somewhat as a compromise, to account for a possible margin of error due to the government's failure to provide an audit of the defendant's own records. See Garavaglia, 5 F.Supp.2d at 522 n. 24. In this case, the government has examined the records of Tobin & Sons in reaching its proposed loss figure.

policies during the relevant time period. Tobin argues that he was effectively uninsured as the result of his fraudulent representations, that the insurance companies would not have paid any claims had they been aware of his deception, and that his victims will be placed in as good a position as they were before the fraud occurred by recouping the amount of claims paid.

 Although the question is a close one, the Court declines to follow the holding in *Garavaglia*. To do so would require that the Court conclude that the policies issued by insurance companies constitute property that has been lost, and further to assign a value to the policies equivalent to the full premium amount that could have been collected based on Tobin & Sons' actual payroll data. The actual value of an individual insurance policy to either the insurer or the beneficiary is, even under ordinary circumstances, contingent upon the occurrence or nonoccurrence of the risks insured against. In this case, the ability to assign a measurable value to the policies is further undermined by the right of the insurer, arising out of the fraud, to rescind the insurance contract entirely.[3] In view of Tobin's misrepresentations, it is extremely doubtful that Tobin & Sons was legally entitled to claim benefits under the policies. The Court concludes that the "value" of the insurance coverage is too abstract and uncertain under the circumstances of this case to constitute lost property for purposes of calculating restitution under section 3663 or 3663A.[4]

As Tobin acknowledges, however, there was at least one claim made under these policies and paid by one of the victims as a result of the fraud. That payment does represent actual loss to the insurance company that made it, because as the Court has noted, Tobin's fraud gave rise to a right of recission. The actual loss in this case, therefore, may be measured by the amount of the claims paid, but not by the amount of the premiums withheld. Unfortunately, the record does not reflect the amount of the claim that was made or the identity of the victim that made the payment. The government shall adduce such proof as is necessary to establish these facts within twenty days of the date of this opinion.

SO ORDERED.

---

3. Under both federal law and Massachusetts law, the conventional remedy of an insurer for fraudulent misrepresentations by an insured is recission of the contract. *See Security Life Ins. Co. of America v. Meyling*, 146 F.3d 1184, 1191–92 (9th Cir.1998); *F.D.I.C. v. Underwriters of Lloyd's of London*, 3 F.Supp.2d 120, 145 (D.Mass.1998). The government cites no authority, and this Court has found none, that would afford the insurer a remedy of enhanced premium payments.

4. This ruling in no way impairs the rights of the insurance companies to recover their expectancy damages from Tobin & Sons as a result of Tobin's fraud. Indeed, Tobin's fraud is now fully established and it seems very likely that in a civil

fraud action in federal court each insurance company could rely upon the pre-sentence report to establish the sum it would have earned from the risk it assumed, were it not for Tobin's fraud. *See* Fed.R.Evid. 803(8)(c). Given the specter of the exemplary damages provided against a business person who engages in such unfair or deceptive business practices, *see* Mass.Gen.Laws ch. 93A, § 11, Tobin & Sons may well be facing bankruptcy.

Still, expectancy damages are not the equivalent of monetary loss, and it appears that Congress did not intend that the government's limited prosecutorial resources be marshaled to secure the benefit of the bargain to insurance companies.