UNITED STATES of America ex rel. Roger Collins, Petitioner,

v.

George WELBORN, Warden, Menard Correctional Center, Respondent.

UNITED STATES of America ex rel. William Bracy, Petitioner,

v.

Richard GRAMLEY, Warden, Pontiac Correctional Center, Respondent.

Nos. 93 C 5282, 93 C 5328.

United States District Court, N.D. Illinois, Eastern Division.

May 6, 1999.

Robert Hugh Farley, Jr., Robert H. Farley, Jr., Ltd., Naperville, IL, Stephen E. Eberhart, Tinley Park., IL, for petitioner Collins.

Gilbert H. Levy, Seattle, WA, John L. Stainthorp, People's Law Offices, Chicago, IL, for petitioner Bracy.

Steven Joseph Zick, Terence Madsen, Illinois Atty. General's Office, Chicago, IL, for respondent.

### MEMORANDUM OPINION AND ORDER

HART, District Judge.

In 1980, Frederick Lacey, R.C. Pettigrew, and Richard Holliman were found shot to death near a viaduct south of the downtown area of Chicago, Illinois. Following a jury trial in the Circuit Court of Cook County, Illinois before Judge Thomas Maloney, petitioners Roger Collins and William Bracy were found guilty of the three murders and related charges. Collins and Bracy were sentenced to death on the murder convictions. The murder convictions and death sentences were affirmed on direct appeal, *People v. Collins*, 106 Ill.2d 237, 87 Ill.Dec. 910, 478 N.E.2d 267, *cert. denied*, 474 U.S. 935, 106 S.Ct. 267, 88 L.Ed.2d 274 (1985), and postconviction relief was subsequently denied, *see People v. Collins*, 153 Ill.2d 130, 180 Ill.Dec. 60, 606 N.E.2d 1137 (1992), *cert. denied*, 508 U.S. 915, 916, 113 S.Ct. 2355, 124 L.Ed.2d 263 (1993). Bracy and Collins then filed separate federal habeas corpus petitions, which were consolidated in this court.

Petitioners raised a number of claims [1] in their federal habeas corpus petitions, *see United States ex rel. Collins v. Welborn*, 868 F.Supp. 950, 967 (N.D.Ill.1994) (*"Collins"*), all of which were held to be an insufficient basis for relief. *See id.* at 967–94. Subsequent to the state court trial, Judge Maloney had been indicted and convicted of racketeering offenses involving the acceptance of bribes to fix cases. *See United States v. Maloney*, 71 F.3d 645 (7th Cir.1995), *cert. denied*, 519 U.S. 927, 117 S.Ct. 295, 136 L.Ed.2d 214 (1996). Petitioners did not attempt to bribe Maloney nor did he solicit a bribe from them. Petitioners contend, however, that Maloney compensated for his defendant-favoring rulings in cases involving bribes by being especially hard on defendants who did not pay bribes. Petitioners also alleged that another judge assigned to hear their postconviction proceedings accepted bribes to fix cases. Any claims based on corruption of the postconviction judge were denied on grounds of waiver. *See Collins*, 868 F.Supp. at 991.

---

1. Throughout these proceedings, all claims or arguments raised by either petitioner have been treated as being raised on behalf of both petitioners, except in the limited circumstances where factual differences limit the claim or argument to being applicable to only one petitioner.

Claims based on Maloney's bribetaking were not waived for failure to raise in the state courts because the claims were based on some evidence that was not publicly revealed until after postconviction relief had been denied at the trial level. *See id.* It was recognized that "[t]he constitutional right to a fair trial includes the right to a trial judge who is neutral, detached, and free from bias." *Id.* However, petitioners did not contend they had sufficient facts to presume or show the compensatory bias they had alleged. Instead, they contended that they were entitled to additional discovery in order to attempt to prove Maloney's bias. It was held that petitioners failed to show good cause for further discovery and therefore the claims related to Maloney's corruption were denied. *Id.*

*Collins* was affirmed on appeal to the Seventh Circuit. *Bracy v. Gramley,* 81 F.3d 684 (7th Cir.1996) ("*Bracy I* "). As to the claims related to Maloney's corruption, the Seventh Circuit held that a claim of being tried by a biased judge does not require a showing of a prejudicial effect on the outcome of the trial as long as there is a showing of either actual bias or "a possible temptation so severe that we might presume an actual, substantial incentive to be biased." *Id.* at 688 (quoting *Del Vecchio v. Illinois Department of Corrections,* 31 F.3d 1363, 1380 (7th Cir.1994) (*en banc* ), *cert. denied,* 514 U.S. 1037, 115 S.Ct. 1404, 131 L.Ed.2d 290 (1995)). A showing of an appearance of impropriety would be an insufficient basis for relief. *Bracy I,* 81 F.3d at 688. In passing, the Seventh Circuit also noted that no precedent existed for the proposition that accepting bribes in some cases automatically invalidated a judge's rulings in other cases in which the judge did not take or solicit bribes. Therefore, it was indicated that relief on such a theory would violate *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). *See Bracy I,* 81

F.3d at 689. *Bracy I,* 81 F.3d at 689–90, holds that petitioners only had sufficient evidence to make out a case of an appearance of impropriety, which would not be enough to support relief. The Seventh Circuit believed that, at most, petitioners would be able to show that Maloney generally favored the prosecution in cases in which he was not bribed, but would not be able to show that such a bias occurred in petitioners' case itself. As to petitioners' request for further discovery that would enable them to show actual bias, the Seventh Circuit held that petitioners had not shown good cause for discovery. *Id.* at 690–91. The Seventh Circuit noted that the transcript of Maloney's criminal trial and his record of rulings in the criminal cases in which he presided were all of public record. The Seventh Circuit reasoned that, since there was no indication that those records supported actual bias in petitioners' criminal case, discovery under Rule 6(a) of the Rules Governing Section 2254 Cases was also unlikely to yield evidence of actual bias. *Id.*

The Supreme Court granted certiorari only on the issue of whether petitioners [2] had made a sufficient showing of good cause for discovery on the bias issue. In order to resolve that question, the Supreme Court "first identif[ied] the 'essential elements' " of the judicial-bias claim. *Bracy v. Gramley,* 520 U.S. 899, 117 S.Ct. 1793, 1797, 138 L.Ed.2d 97 (1997) ("*Bracy II* "). It held that "the floor established by the Due Process Clause clearly requires a 'fair trial in a fair tribunal' before a judge with no actual bias against the defendant or interest in the outcome of his particular case." *Id.* (quoting *Withrow v. Larkin,* 421 U.S. 35, 46, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975)). The Supreme Court described petitioners' theory as follows: "Petitioner contends, however, that Maloney's taking of bribes from some

---

**2.** The Supreme Court granted certiorari in Bracy's appeal. Collins's appeal was subsequently remanded for further consideration in light of *Bracy II. See Collins v. Welborn,* 520 U.S. 1272, 117 S.Ct. 2450, 138 L.Ed.2d 209 (1997). Since the *Bracy II* ruling has been applied to both petitioners, today's opinion refers to "petitioners" (plural).

criminal defendants not only rendered him biased against the State in those cases, but also induced a sort of compensatory bias against defendants who did not bribe Maloney. Maloney was biased in this latter, compensatory sense, petitioner argues, to avoid being seen as uniformly and suspiciously 'soft' on criminal defendants." *Bracy II,* 117 S.Ct. at 1797. The court concluded that, "difficulties of proof aside, there is no question that, if it could be proved, such compensatory, camouflaging bias on Maloney's part in petitioner's own case would violate the Due Process Clause of the Fourteenth Amendment." *Id.* Referring to evidence of pervasive bribetaking that was presented in Maloney's federal criminal trial and various other evidence, *see id.* at 1798, the Supreme Court concluded that good cause had been shown for further discovery that might enable petitioners to show actual bias at their trial. *Id.* at 1799.

In a subsequent habeas corpus case involving a Cook County judge who accepted bribes from the habeas petitioner's codefendant in the state criminal case, the Seventh Circuit summarized the law as follows:

A criminal defendant has a federal constitutional right to be tried before an impartial judge. The right is not subject to the harmless-error rule, so it doesn't matter how powerful the case against the defendant was or whether the judge's bias was manifested in rulings adverse to the defendant. And it is irrelevant that [the defendant] was convicted by a jury, a judge's role in a jury trial is obviously not of a merely ministerial character .... A bribed judge is deemed partial whatever the fact of the matter may be.

*Cartalino v. Washington,* 122 F.3d 8, 9–10 (7th Cir.1997). *Cartalino* suggests that receiving bribes in some cases is not sufficient proof of bias in another case, "merely a suspicious circumstance that warrants further inquiry" and requires additional proof to show actual bias in the latter case.

*Id.* at 10. *Cartalino,* though, only involved bribes by a codefendant.

Following the remand from the Supreme Court, the parties engaged in extensive discovery of the federal government's file from the *Maloney* criminal prosecution, including nonpublic documents, and other discovery, including depositions of associates of Maloney and attorneys involved in petitioners' trial. The parties were not able to obtain a deposition from Maloney himself; he refused to participate because he claimed he had not received proper notice. Rather than attempting to resolve whether Maloney's refusal to comply with the deposition notice was justified, it was ruled that the parties would be permitted to bring Maloney to Chicago for any necessary hearing on petitioners' claims and any questions about lack of cooperation or invoking the Fifth Amendment would be resolved by this court at that time. A similar ruling was made regarding deponent William Swano's invocation of the Fifth Amendment. Swano is a now-disbarred attorney who paid bribes to Maloney and was a codefendant of Maloney in the federal prosecution.

After the close of discovery, the parties were provided with the opportunity to bring summary judgment motions, although both sides initially indicated that they did not believe the evidence would support summary judgment. Nevertheless, both sides subsequently filed summary judgment motions which are presently pending for ruling. Also pending is petitioners' unopposed motion to expand the record, which will be granted without prejudice to respondents' objections that any of the additional evidence is inadmissible or otherwise deficient.

Rule 11 of the Rules Governing Section 2254 Cases permits the application of the Federal Rules of Civil Procedure to the extent consistent with the § 2254 Rules. Thus, Fed.R.Civ.P. 56 may be applied in a § 2254 proceeding to determine whether factual disputes exist that require a hearing. *See Matta–Ballesteros v. Henman,*

896 F.2d 255, 259 (7th Cir.), *cert. denied,* 498 U.S. 878, 111 S.Ct. 209, 112 L.Ed.2d 169 (1990); *Whitaker v. Meachum,* 123 F.3d 714, 716 n. 2 (2d Cir.1997); *Randle v. Scott,* 43 F.3d 221, 226 (5th Cir.), *cert. denied,* 515 U.S. 1108, 115 S.Ct. 2259, 132 L.Ed.2d 265 (1995).

■ On a motion for summary judgment, the entire record is considered with all reasonable inferences drawn in favor of the nonmovant and all factual disputes resolved in favor of the nonmovant. *Valance v. Wisel,* 110 F.3d 1269, 1274 (7th Cir. 1997); *Patel v. Allstate Insurance Co.,* 105 F.3d 365, 367 (7th Cir.1997). The burden of establishing a lack of any genuine issue of material fact rests on the movant. *Essex v. United Parcel Service, Inc.,* 111 F.3d 1304, 1308 (7th Cir.1997). The nonmovant, however, must make a showing sufficient to establish any essential element for which he will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Wintz v. Northrop Corp.,* 110 F.3d 508, 512 (7th Cir.1997). The movant need not provide affidavits or deposition testimony showing the nonexistence of such essential elements. *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548. Also, it is not sufficient to show evidence of purportedly disputed facts if those facts are not plausible in light of the entire record. *See NLFC, Inc. v. Devcom Mid–America, Inc.,* 45 F.3d 231, 236 (7th Cir.), *cert. denied,* 515 U.S. 1104, 115 S.Ct. 2249, 132 L.Ed.2d 257 (1995); *Covalt v. Carey Canada, Inc.,* 950 F.2d 481, 485 (7th Cir.1991); *Collins v. Associated Pathologists, Ltd.,* 844 F.2d 473, 476–77 (7th Cir.), *cert. denied,* 488 U.S. 852, 109 S.Ct. 137, 102 L.Ed.2d 110 (1988). As the Seventh Circuit has summarized:

> The moving party bears the initial burden of directing the district court to the determinative issues and the available evidence that pertains to each. "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *id.* at 325, 106 S.Ct. 2548 ("the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case"). Then, with respect to issues that the non-moving party will bear the burden of proving at trial, the non-moving party must come forward with affidavits, depositions, answers to interrogatories or admissions and designate specific facts which establish that there is a genuine issue for trial. *Id.* at 324, 106 S.Ct. 2548. The non-moving party cannot rest on the pleadings alone, but must designate specific facts in affidavits, depositions, answers to interrogatories or admissions that establish that there is a genuine triable issue. *Id.* The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

*Selan v. Kiley,* 969 F.2d 560, 564 (7th Cir.1992).

■ Respondents argue two alternative grounds in support of summary judgment. They contend that petitioners' claims are barred by the rule of *Teague* because the claims rely on a new rule of law. Alternatively, they contend that petitioners cannot show actual bias by Maloney. Petitioners

respond that they do not rely upon a new rule of law and further contend that they are entitled to summary judgment because there is irrefutable evidence of Maloney's actual bias.

Despite the fact that it was reversed, respondents repeatedly cite to and rely upon the Seventh Circuit decision in *Bracy I*. Arguably, the Supreme Court did not disagree with the Seventh Circuit as to the law governing petitioners' claims. The Supreme Court's description of the actual bias standard is consistent with statements in *Bracy I*. The Supreme Court did not expressly address *Bracy I*'s discussion of appearance of impropriety. Where the two opinions disagree is that the Supreme Court found good cause for further discovery of evidence necessary to prove actual bias. But even assuming *Bracy I*'s statement of judicial-bias law, including its statement as to *Teague*, is still good law, it does not help respondents. *Bracy I*, 81 F.3d at 689, indicates that a holding that an appearance of impropriety exists that supports relief would be a new rule of law barred by *Teague*. Petitioners, however, do not rely on an appearance of impropriety; they claim that Maloney was actually biased against them. There is no indication in *Bracy I, Bracy II*,[3] or *Cartalino* that the actual bias rule is a new rule of law.

A recent district court case that expressly addresses the *Teague* issue does hold that *Bracy II* represents a new rule of law. *See United States ex rel. Giangrande v. Roth*, 1999 WL 184184 *4–5 (N.D.Ill. March 29, 1999). *Giangrande*, 1999 WL 184184 at *5–6, also goes on to hold that *Teague* does not bar the retroactive application of *Bracy II* because the Supreme Court has applied it retroactively and it is one of those rules that goes to the concept of ordered liberty.

In *Teague*, the Supreme Court held that new constitutional rules of criminal procedure would not be applied retroactively to cases on collateral review. 489 U.S. at 300–01, 109 S.Ct. 1060. As the Court noted, it is "often difficult to determine when a case announces a new rule.... In general, however, a case announces a new rule when it breaks new ground or imposes a new obligation on the States or the Federal Government.... To put it differently, a case announces a new rule if the result was not dictated by precedent existing at the time the defendant's conviction became final." *Id.* at 301, 109 S.Ct. 1060. The Court identified two exceptions, one of which is that "a new rule should be applied retroactively if it requires the observance of 'those procedures that are "implicit in the concept of ordered liberty."'" *Id.* at 307, 109 S.Ct. 1060 (quoting *Mackey v. United States*, 401 U.S. 667, 693, 91 S.Ct. 1160, 28 L.Ed.2d 404 (1971) (Harlan, J., concurring in part and dissenting in part) (quoting *Palko v. Connecticut*, 302 U.S. 319, 325, 58 S.Ct. 149, 82 L.Ed. 288 (1937) (Cardozo, J.))). The Court further describes this exception by explaining that it is limited to procedures that both "implicate the fundamental fairness of the trial" and "without which the likelihood of an accurate conviction is seriously diminished." *Teague*, 489 U.S. at 312–13, 109 S.Ct. 1060.

Courts have identified a three-step analysis for applying *Teague*.

First, the court must ascertain the date on which the defendant's conviction and sentence became final for *Teague* purposes. Second, the court must survey the legal landscape as it then existed and determine whether a state court considering the defendant's claim at the time his conviction became final would have felt compelled by existing precedent to conclude that the rule he seeks

---

**3.** Respondents made no *Teague* argument before the Seventh Circuit; it was raised *sua sponte* by the court. Before the Supreme Court, respondents argued *Teague* barred any claim based on an appearance of impropriety.

*See* Respondent's Brief in *Bracy II*, 1999 WL 129018 *3, 13 (1997). *Bracy II* makes no mention of *Teague* and only discusses actual bias as the basis of petitioners' claims.

was required by the Constitution. Finally, even if the court determines that the defendant seeks the benefit of a new rule, the court must decide whether that rule falls within one of the two narrow exceptions to the nonretroactivity principle.

*Caspari v. Bohlen,* 510 U.S. 383, 390, 114 S.Ct. 948, 127 L.Ed.2d 236 (1994). *Accord Winsett v. Washington,* 130 F.3d 269, 275 (7th Cir.1997); *Spreitzer v. Peters,* 114 F.3d 1435, 1442 (7th Cir.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 1060, 140 L.Ed.2d 121 (1998).

In the present case, the state sentences and convictions became final for *Teague* purposes when, following direct appeal in the Illinois courts, the United States Supreme Court denied certiorari. *See Spreitzer,* 114 F.3d at 1442. That date is October 21, 1985.

*Bracy II* clarified the standard for discovery in federal habeas corpus proceedings, but it did not establish any new rule of constitutional law. More than a half century before petitioners' convictions became final, the Supreme Court had established that actual bias of the presiding judicial official violates constitutional due process. *See Tumey v. Ohio,* 273 U.S. 510, 522, 47 S.Ct. 437, 71 L.Ed. 749 (1927) ("it certainly violates the Fourteenth Amendment and deprives a defendant in a criminal case of due process of law to subject his liberty or property to the judgment of a court, the judge of which has a direct, personal, substantial pecuniary interest in reaching a conclusion against him in his case"). *See also In re Murchison,* 349 U.S. 133, 136, 75 S.Ct. 623, 99 L.Ed. 942 (1955) ("Fairness of course requires an absence of actual bias in the trial of cases."); *Margoles v. Johns,* 660 F.2d 291, 297 (7th Cir.1981), *cert. denied,* 455 U.S. 909, 102 S.Ct. 1256, 71 L.Ed.2d 447 (1982) (quoting *Howell v. Jones,* 516 F.2d 53, 57–58 (5th Cir.1975), *cert. denied,* 425 U.S. 945, 96 S.Ct. 1687, 48 L.Ed.2d 189 (1976)) ("They involved situations where there was actually some incentive to find one

way or the other, *i.e.,* financial considerations (*Ward & Tumey* ) or previous participation by the trying judge in the proceedings at which the contempt occurred (*Murchison* ).");  *Bracy II,* 117 S.Ct. at 1797 (citing *Tumey* ). The Court of Appeals' discussion of *Teague* in *Bracy I* concerned appearances of impropriety. There is a distinction in the case law between appearances of impropriety and actual bias. Whether certain circumstances constitute an appearance of impropriety is a legal question. *See In re Hatcher,* 150 F.3d 631, 637 (7th Cir.1998). Whether a judge was actually biased is a factual question. *Cf. Gonzales v. Thomas,* 99 F.3d 978, 986 & n. 5 (10th Cir.1996), *cert. denied,* 520 U.S. 1159, 117 S.Ct. 1342, 137 L.Ed.2d 501 (1997) (whether a juror is actually biased is a question of fact). *Teague* concerns the application of new rules of constitutional law, not the treatment of possible factual findings of bias.

Prior to 1985, it was also established that a showing of "a possible temptation so severe that we might presume an actual, substantial incentive to be biased," *Bracy I,* 81 F.3d at 688 (quoting *Del Vecchio,* 31 F.3d at 1380), is sufficient. *See Cartalino,* 122 F.3d at 11 (citing *Tumey* ); *Taylor v. Hayes,* 418 U.S. 488, 501, 94 S.Ct. 2697, 41 L.Ed.2d 897 (1974) (quoting *Ungar v. Sarafite,* 376 U.S. 575, 588, 84 S.Ct. 841, 11 L.Ed.2d 921 (1964)) ("the inquiry must be not only whether there was actual bias on [the judge's] part, but also whether there was 'such a likelihood of bias or an appearance of bias that the judge was unable to hold the balance between vindicating the interests of the court and the interests of the accused'"). *Cf. Dyer v. Calderon,* 151 F.3d 970, 984–85 (9th Cir.), *cert. denied,* —— U.S. ——, 119 S.Ct. 575, 142 L.Ed.2d 479 (1998) (implied bias of juror is a rule of law that predates the Constitution).

Also, prior to 1985, it was established that a claim based on actual bias of the judge does not require proof of a prejudicial effect in the case. *Tumey,* 273 U.S. at

535, 47 S.Ct. 437. *See also Chapman v. California*, 386 U.S. 18, 23 & n. 8, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

■ Petitioners do not rely on a new rule of law to support their claims that Maloney was actually biased against them. But even if *Bracy II* were to be construed as a new rule of law, *Teague* would not bar petitioners' claims. The impartiality of the judge presiding over a criminal proceeding goes to the fundamental fairness and accuracy of a proceeding and therefore is implicit in the concept of ordered liberty. *See Rose v. Clark*, 478 U.S. 570, 577–78, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986) (impartiality of trial judge goes to the fundamental fairness of a trial and, without such impartiality, "a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence"); *Giangrande*, 1999 WL 184184 at *6. *Teague* does not bar petitioners' actual bias claim.

■ The next question is whether petitioners have sufficient evidence of actual bias so as to be able to withstand summary judgment. As part of the sentencing process in Maloney's federal criminal prosecution, the government submitted its version of Maloney's offenses (hereinafter "Government Version") which then became part of the presentence report in the case which was submitted by the Probation Department to the court, with copies provided to Maloney and the government. Petitioners rely on the following passages from the Government Version:

> ... THOMAS MALONEY's corruption began at the time he was a criminal defense attorney paying off judges and court personnel to fix cases-including a notorious murder case-and continued through the time he was a judge working as a mafia factotum in the Cook County Circuit Court system and taking all manners of bribes on very serious criminal cases. Thomas Maloney's reputation as a strict prosecution-oriented judge was not mistake. By casting this image, Maloney sought to deflect suspi-

cion from his criminal activity, while simultaneously giving select desperate defendants who knew the right people an incentive to pay him off.

\*    \*    \*    \*    \*    \*

> ... when he got his turn on the bench, THOMAS MALONEY imposed a sinister system which had the dual effect of concealing and promoting his corruption. THOMAS MALONEY the former champion of the defendant became one of the most ruthless judges on the bench. Showing defendants little mercy had the effect of diverting any conceivable suspicion from MALONEY while at the same time giving defendants a strong motivation to cough up big bribery dollars.

Petitioners contend that the Government Version is admissible as a public report pursuant to Fed.R.Evid. 803(8) which provides:

> Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (A) the activities of the office or agency, or (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel, or (C) in civil actions and proceedings and against the Government in criminal cases, factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness.

Without citing any supporting case law and without making any separate argument in their reply brief, respondents make the following contention in their Local General Rule 12(N)(3)(b) statement.

> Admit that the Government's Official Version is correctly quoted. Deny that this document is precedential authority. As this Court is no doubt aware, this

type of document is created for the benefit of the federal Probation Department as an aid in the preparation of its sentencing recommendation. It is not filed separately by the United States Attorney, and is never a part of the public record, but is eventually received by the district court as part of the Probation Department's recommendation. It should be regarded as being in the nature of a summation of what was proved at trial, and has no particular significance concerning events outside the trial it describes. It is not the law, and is no substitute for case law or the trial record in Maloney's own case. It is likewise no substitute for an independent determination of the ultimate issue in this case, the resolution of which rests with this Court alone.

Rule 803(8)(C) requires that the evidence be (a) a report or statement of a public office or agency; (b) factual findings; (c) result from an investigation made pursuant to authority; and (d) not indicate lack of trustworthiness. Clearly, the United States Attorney is a public office or agency. There is no requirement that the report itself be publicly disclosed. *See Redmond v. Baxley,* 475 F.Supp. 1111, 1122 (E.D.Mich.1979). The Government Version is a factual finding in that it summarizes the facts that the government found regarding Maloney's offenses and related conduct. Contrary to respondents' objection, factual findings include factually based conclusions or opinions made by the preparer of the report based on disputed evidence. *Beech Aircraft Corp. v. Rainey,* 488 U.S. 153, 162, 109 S.Ct. 439, 102 L.Ed.2d 445 (1988). The report resulted from an investigation made pursuant to the prosecutors' legal authority. As long as it satisfies the trustworthiness requirement, the Government Version is admissible under Rule 803(8)(C). *Cf. United States v. Tobin,* 28 F.Supp.2d 674, 677 n. 4 (D.Mass.1998) (*dictum*) (presentence report would be admissible evidence in a civil fraud action brought by the victims of the crime).

Since the other requirements of Rule 803(8)(C) are satisfied, the Government Version is presumed to be trustworthy and the burden is on respondents to show that it lacks trustworthiness. *Ariza v. City of New York,* 139 F.3d 132, 134 (2d Cir.1998); *Montiel v. City of Los Angeles,* 2 F.3d 335, 341 (9th Cir.1993); *Cortes v. Maxus Exploration Co.,* 977 F.2d 195, 201 (5th Cir. 1992); *Van Houten–Maynard v. ANR Pipeline Co.,* 1995 WL 317056 *9 (N.D.Ill. May 23, 1995); *In re Air Crash Disaster at Sioux City, Iowa, on July 19, 1989,* 780 F.Supp. 1207, 1212 (N.D.Ill.1991). Respondents certainly have not met this burden and it is not even clear that they even contend the Government Version is not trustworthy. In any event, the Government Version appears to be trustworthy. It is thorough and detailed and there is no indication that it is inconsistent with the evidence regarding Maloney's crimes. It is an adversarial document, and therefore may be slanted to support the government's position. But that goes to the weight to be accorded the document; it does not make it untrustworthy. Also, unlike the litigants in a civil action, a criminal prosecutor also has a duty to do justice and therefore does not necessarily zealously slant the facts to support a position. The Government Version is admissible evidence.

■ On respondents' summary judgment motion, factual disputes must be resolved in petitioners' favor and all reasonable inferences from the evidence must be drawn in petitioners' favor. Therefore, on respondents' motion, it must be accepted as true that Maloney consciously acted against non-bribing defendants as a means of both generating bribes and increasing the amount he could demand, as well as in an attempt to cover up and protect the bribery that was going on. This is unlike a judge who is "tough" on defendants as a means of getting reelected or because of his or her philosophical views. *See Bracy I,* 81 F.3d at 689. Instead, this is a situa-

tion where a judge is motivated to rule against defendants in order to benefit financially.

On respondents' motion, it must be assumed to be true that Maloney's corruption was pervasive and that he was generally acting in a calculated manner to generate additional bribery income. Petitioners point to sufficient evidence to link this motivation to their case and support a genuine factual dispute that Maloney was actually biased against them. Respondents' motion for summary judgment will be denied.

On petitioners' summary judgment motion, disputes must be resolved in respondents' favor and all reasonable inferences drawn in respondents' favor. On petitioners' motion, Maloney's corruption cannot be assumed to be as pervasive as was assumed to be true for purposes of respondents' motion. Further, the parties have not yet had an opportunity to obtain Maloney's testimony. *See* Fed.R.Civ.P. 56(f). On petitioners' motion, it cannot be conclusively determined that Maloney was actually biased in petitioners' case. That factual issue will have to be resolved following a hearing before the court.

The next steps in this case are to prepare a pretrial order and hear the evidence. Because the hearing is before the court, not a jury, it need not be held on consecutive days. Because Maloney and Swano did not fully testify at depositions and because it may be difficult to have them available on a precise date, the court will hear their testimony prior to the remainder of the evidence. The parties shall forthwith begin the process of issuing writs to bring these two witnesses to Chicago to testify.

The parties shall also engage in the preparation of a final pretrial order that will be submitted in open court on July 20, 1999. The parties shall submit a pretrial order limited to the following items: (a) an agreed statement of uncontested facts; (b) exhibit lists and any objections to exhibits; (c) witness lists and any objections to witnesses; (d) a list of depositions to be submitted; and (e) proposed findings of facts and conclusions of law with legal citations.

IT IS THEREFORE ORDERED that petitioners' motion to expand the record is granted. Respondents' motion for summary judgment is denied. Petitioners' motion for summary judgment is denied. In open court on July 20, 1999 at 11:00 a.m., the parties shall submit an original and one copy of a topbound, final pretrial order containing the items set forth in this opinion.